UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK EARL WHITE,

        Plaintiff,

Case No. 1:08-cv-277

Hon. Robert J. Jonker

v.

CORRECTIONAL MEDICAL SERVICES,
 *et al.*,

        Defendants.
                                  /

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on a motion to dismiss filed by defendants Correctional Medical Services, Inc. ("CMS"), Craig Hutchinson, M.D., and Thomas LaNore, P.A. (docket no. 21).[1]

    **I.**    **Background**

        Plaintiff sets forth the following allegations in his complaint. In December 2004, prior to plaintiff's present incarceration at the Michigan Department of Corrections (MDOC), he was involved in an auto accident and sustained serious injuries to the right femur, left ankle, various vertebrae and neck. These injuries required both corrective surgery and orthopedic aids (i.e., high top ankle support shoes, an insert to compensate for the difference in his leg length, a neoprene sleeve for the right knee and a "memory foam mattress" for his back and neck injuries). Plaintiff was arrested and transported to the Saginaw County Jail in June 2006. Dr. Wolohan of the Saginaw

---

[1] Plaintiff did not file a specific response to the motion but did in the context of filing some objections to a contemporaneous Report and Recommendation, submit material which the court has treated as being in opposition to the motion. *See,* II.B.2., *infra*.

Valley Bone and Joint Clinic treated plaintiff while he was held in the jail.  In March 2007, the doctor determined that two screws were "broken" in his right femur.  However, plaintiff did not receive any treatment at that time due to conditions at the jail.

In July 2007, plaintiff was transferred to the MDOC, where a doctor ordered antibiotics, pain medication and shoes.  He was sent to the Boyer Correctional Facility (OTF), where in September 2007 Nurse Marble prescribed him antibiotics for a scalp and armpit infection; ordered him "high-top gel shoes;" increased the pain medication for his injuries; and requested a specialist to review his right thigh.  In October 2007, defendant S. Moore presented plaintiff with shoes, a left ankle brace and "gel heel cups."  However, this was the "wrong" equipment and Moore had to re-order appropriate items.  On November 10, 2007, defendant Susan Havens wrote plaintiff two major misconducts for disobeying a direct order and substance abuse.  A hearings officer found plaintiff guilty of both charges.  On January 9, 2008, plaintiff was transferred to the West Shoreline Facility (MTF), where he was examined by P.A. Tom LaNore in January and February 2008.  LaNore wanted more x-rays, asked plaintiff to sign a release for outside medical records, and told plaintiff that the "correct shoes were being ordered."  Plaintiff filed his complaint on March 21, 2008.

Plaintiff alleges that the scalp infection is still present, that he has lower back pain, and that he sustained long term damage to his left ankle, leg and knee.  Plaintiff seeks injunctive relief with respect to his medical conditions, including a court order requiring defendants to provide him with "the correct orthopedic aids" such as "an air mattress for back, effective pain relief, correct shoes, neoprene brace for right knee, consult with all  specialists needed to ascertain the damage already done and prevent <u>future</u> [sic]" (emphasis in original).  In addition, plaintiff wants the court to remove the major misconducts issued against him by defendant Havens, because these will

prevent him from consideration for parole and employment as a law clerk. Finally, plaintiff demands monetary damages "in excess of 1.5 million dollars."

## II.    Discussion

### A.    Standard of review

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendants have moved to dismiss plaintiff's action pursuant to Fed. R. Civ. P. 12(b)(6). Under this rule, a complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). "A motion to dismiss for failure to state a claim is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir.2005). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action . . . [t]o state a valid claim, a complaint must contain either direct or inferential allegations respecting

3

all the material elements to sustain recovery under some viable legal theory." *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citations omitted).

### B. Plaintiff failed to exhaust his claims against defendants CMS, Dr. Hutchinson and P.A. LaNore

#### 1. Exhaustion

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S.Ct. at 922-23.

Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. Policy Directive 03.02.130 at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive provides the

following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II. *Id.* at ¶¶ BB. The respondent at Step II is designated by the policy, e.g., the regional health administrator for grievances regarding health care issues, etc. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III. *Id.* at ¶¶ FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

### 2. Defendants' motion to dismiss

A defendant can raise affirmative defenses in a motion to dismiss. *See, e.g., Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) (defendant could properly raise the affirmative defense of qualified immunity "based on a pre-answer motion to dismiss"); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (on a Rule 12(b)(6) motion to dismiss on statute of limitations grounds, the court may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice).

It is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir.), cert. denied -- S. Ct. --, 2008 WL 452247 (2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on

the merits, an exhaustion defense [under the PLRA] . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment. *Id.* (internal quotation marks omitted).

The MDOC grievance procedure is an administrative review regulated by the agency's Policy Directives. This court may take judicial notice of plaintiff's grievance filings in this state agency proceeding for purposes of deciding a motion to dismiss. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute); *Marshek v. Eichenlaub*, No. 07-1246, 2008 WL 227333 at *1 (6th Cir. Jan. 25, 2008) (court can take judicial notice of prisoner's transfer as shown in the Bureau of Prison's Inmate locator accessed on the agency's official website); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *Walker v. Woodford*, 454 F.Supp.2d 1007, 1021-23 (S.D.Cal. 2006) (the Court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment, including matters that can be judicially noticed; documents pertaining to the prisoner's exhaustion efforts "are part of a state administrative proceeding and may be judicially noticed, not for the truth of their contents but for the fact that the grievance proceeding occurred"); *Smart v. Goord*, 441 F.Supp.2d 631, 637 (S.D.N.Y. 2006) ("[w]hen ruling on a motion to dismiss, the Court may take judicial notice of records and reports of administrative bodies, items in the record of the case, matters of general public record, and copies of documents attached to the complaint");

*Eggerson v. United States*, 1: 05-cv-594, 2006 WL 1720252 at \*3 (W.D.Mich. June 22, 2006) ("In ruling on a motion under Rule 12(b)(6), the court may supplement the facts alleged in the pleadings by considering facts susceptible to judicial notice under Fed.R.Evid. 201"); *Keating v. University of South Dakota*, 386 F.Supp.2d 1096, 1102 (D.S.D. 2005) (court took judicial notice of administrative proceedings filed by defendants pursuant to Fed.R.Evid. 201); *Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 129 F.Supp.2d 578, 580-581 (W.D.N.Y. 2000) (although documents filed by plaintiff and defendants with various agencies were not attached to plaintiff's complaint, court could properly consider the documents on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6); plaintiff had notice of the documents and relied upon them in bringing this action).

Such judicial notice is consistent with the purpose of the PLRA's "invigorated" exhaustion provision, which Congress enacted to control the "sharp rise in prisoner litigation in the federal courts." *Woodford*, 548 U.S. at 84. One reason for creating prisoner grievance procedures under the PLRA was to create such an administrative record for the court. "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." *Jones v. Bock*, -- U.S. --, 127 S.Ct. 910, 914 -915 (2007).

Here, plaintiff's complaint is based upon grievance OTF 07090074212E1, which is attached to the complaint. This grievance does not name any of the defendants in this action. Rather, it refers to plaintiff's appointment with an unidentified "OTF Nurse" on September 19, 2007.

At that time, plaintiff requested treatment for serious injuries sustained in the December 10, 2004[2] auto accident.  Dr. Dunker at the MDOC's Receiving and Guidance Center advised plaintiff that he would be seen immediately to schedule surgery, apparently with respect to two broken screws on the metal brace in the right femur.  Plaintiff asserts that the "OTF Nurse" displayed a "casual" attitude towards his condition and "questioned" the medication given to him by Dr. Dunker.   The "OTF Nurse" is the only person named in this grievance.[3]  Plaintiff has not properly exhausted this grievance against defendants CMS, Dr. Hutchinson and P.A. LaNore, because he did not include the names of these three defendants as "involved in the issue being grieved."  *See* Policy Directive 03.02.130 ¶ R; *Jones*, 127 S.Ct. at 922-23; *Woodford*, 548 U.S. 81.

Furthermore, grievance OTF 07090074212E1 cannot support plaintiff's claims against P.A. LaNore for a separate reason.   Plaintiff's complaint alleges that P.A. LaNore treated him in January and February 2008, after plaintiff was transferred from OTF to MTF.  Clearly, plaintiff's grievance filed at OTF could not have exhausted his administrative remedies with respect to P.A. LaNore's later treatment provided at MTF.  Plaintiff apparently recognized this deficiency, because he filed a grievance against LaNore on April 29, 2008, more than one month after filing this action.  *See* grievance MTF 08040024212E1 (docket no. 34-2).  The Step I  grievance names defendant P.A. LaNore, and the Step II appeal names defendant CMS.  *See* docket no. 34-2. However, plaintiff cannot rely on this recently filed grievance to establish exhaustion.  A prisoner may not exhaust administrative remedies during the pendency of the federal civil rights action based

---

[2] Plaintiff's grievance erroneously refers to the date of the accident as "12/10/07."

[3] In his complaint, plaintiff alleges that defendant Susan Havens, an MDOC employee, examined him on September 19, 2007.

upon that grievance. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999). As the Sixth Circuit observed in *Freeman*,

> While we recognize that plaintiff made some attempts to go through the prison's grievance procedures, we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed. The plain language of the statute makes exhaustion a precondition to filing an action in federal court ("No action shall be brought ... until such administrative remedies as are available are exhausted."). The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit.

*Id.* (citations omitted).

Accordingly, defendants CMS, Dr. Hutchinson and P.A. LaNore should be dismissed from this action for lack of exhaustion.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that motion to dismiss filed by defendants CMS, Dr. Hutchinson and P.A. LaNore (docket no. 21) be **GRANTED**.

Dated:  January 28, 2009           /s/ Hugh W. Brenneman, Jr.
                                   HUGH W. BRENNEMAN, JR.
                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).